

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

2007R00995

*610 Federal Plaza*
*Central Islip, New York 11722*

May 23, 2007

<u>VIA ECF & HAND DELIVERY</u>
The Honorable Thomas C. Platt
United States District Judge
United States District Court
Federal Plaza, Room 1044
Central Islip, New York 11722

   Re: United States v. Sabhnani & Sabhnani
     <u>Criminal Docket No. 07-CR-429(TP)</u>

Dear Judge Platt[1]:

   The government hereby respectfully moves, pursuant to
the provisions of Title 18, United States Code, Section 3142, for
permanent orders of detention for both defendants in the above-
captioned case.  On May 17, 2007, the Honorable A. Kathleen
Tomlinson, United States Magistrate Judge, set bail releasing the
defendant VARSHA MAHENDER SABHNANI on a $2.5 million secured bond
and the defendant MAHENDER MURLIDHAR SABHNANI on a $1 million
secured bond, along with other conditions of release (the "bail
orders").  Those conditions included, among other things,
restraining orders on bank accounts, the home confinement and
electronic monitoring of the defendants, and pen registers on the
defendants' telephones.  For the reasons set forth in the
government's attached bail letter dated May 15, 2007 (the "May 15
letter"), and the reasons set forth below, the government
continues to believe that the defendants present a danger to the
victims and their families, and a substantial risk of flight.

---

[1] The government directs this letter to Your Honor because the
case was randomly assigned to Your Honor pursuant to the
procedures set forth in the E.D.N.Y. Local Rules.  The government
is aware that the Court is currently considering whether this
criminal case will be handled by Your Honor or the Honorable
Arthur D. Spatt.

## The Risk of Danger

In addition to the horrific treatment and outright torture inflicted upon Jane Doe #1 and Jane Doe #2, which is summarized in part in the May 15 letter, Jane Doe #2 advises that the defendant VARSHA MAHENDER SABHNANI threatened to have Jane Doe #2's husband arrested in Indonesia.  Such a threat clearly indicates that the defendant VARSHA MAHENDER SABHNANI has the ability to obstruct this investigation and prosecution.

## Defendants' Risk of Flight

The investigation of the defendants to date has revealed that they have significant and long-standing ties to multiple foreign countries, including India, Indonesia, the United Kingdom, and several Middle Eastern countries.  Indeed, the defendants have a history of extensive travel to these and other countries.  According to the Pre-Trial Services Report ("PTS Report") for the defendant VARSHA MAHENDER SABHNANI, her mother and all of her five siblings currently reside in Indonesia.  The defendant MAHENDER MURLIDHAR SABHNANI's PTS Report indicates that he has a sister who resides in Spain, three sisters who reside in India and a brother residing in Dubai.

The defendant VARSHA MAHENDER SABHNANI submitted a written bail application dated May 17, 2007 that, among other things, made certain representations regarding her and her husband's businesses and financial affairs (the "bail application").  An investigation of those representations has raised serious questions regarding at least two claims made in the bail application, which appear to be potentially misleading.

The first representation is that "New York is the home base for all of [the defendant MAHENDER MURLIDHAR SABHNANI's] business."  See bail application at p. 8.  The defendant MAHENDER MURLIDHAR SABHNANI's collection of businesses manufacture and sell perfumes, body sprays and body powders.  The perfumes appear to be manufactured by a subcontractor located in New York.  The body sprays and body powders, however, appear to be manufactured by subcontractors located in the United Kingdom named Expac and Statestrong.  The government and the Court have not been provided with any information regarding the business relationships between the defendants and Expac and Statestrong, including whether they own any interests in these companies or whether these companies oversee bank accounts for the benefit of the defendants or their companies.  Similarly, it appears that the vast majority, if not all, of the customers of the defendants' businesses are located in Singapore, Saudi Arabia, and other Middle Eastern countries.

Again, the defendants have not provided the government or the Court with any information regarding their relationships with these overseas customers, including whether these customers oversee bank accounts for the benefit of the defendants or their companies.

The second representation is that defense counsel was "not aware of any overseas accounts which are available to finance flight." See bail application at p. 5. The government's investigation of the defendants' financial history has uncovered some financial transactions that raise questions regarding that representation. In particular, in September 2002, $200,000 was sent via wire transfer from a bank account at Fleet Bank in New York in the name of "Eternal Love" to "Ashok M. Sabhnani" in the United Arab Emirates. It is presumed that "Ashok M. Sabhnani" is the defendant MAHENDER MURLIDHAR SABHNANI's brother. In addition, in December 2002, $500,000 was sent via wire transfer from "Ashok M. Sabhnani" to a bank account at Fleet Bank, New York in the name of the defendant MAHENDER MURLIDHAR SABHNANI. Also, in October 2004, $150,000 was sent via wire transfer from a bank account at Fleet Bank in New York to "Ashok M. Sabhnani" in the United Arab Emirates. Thus, these transactions showing the transfers of at least $850,000 between the defendant MAHENDER MURLIDHAR SABHNANI and his brother raises serious questions regarding the defendants' access to significant funds located overseas that could be used to finance the defendants' flight.

The doubts related to these representations are magnified when considered in conjunction with the defendants' clear access to significant funds. It appears that the defendants own their residence at 205 Coachman Place, Syosset, New York 11791 free of any encumbrances, and they paid approximately $1.435 million in cash for an apartment located at 1600 Broadway, Apartment 17G, New York, New York on June 20, 2006. According to their PTS Reports, the defendants appear to own approximately $3 million in unidentified securities, but their accountant, Murray Schindel, estimates that the value of the defendants' securities as of 2005 was approximately $1 million. The defendants also appear to control a bank account in the United States that contains approximately $300,000.

Furthermore, as discussed in the May 15 letter, bank records show that, between June 2005 and October 2006, a bank account in the name of PVM International Corp. was involved in 242 wire transfers of funds totaling approximately $17,241,902. Most of the fund transfers were deposits into the PVM International Corp. bank account originating from the Kingdom of Bahrain, Saudi Arabia, Qatar and the United Arab Emirates. In

4

addition, between September 2005 and October 2006, approximately $10,515,000 in checks were written out of the same bank account for PVM International, Corp. Thus, it appears that at least one bank account for PVM International Corp. was involved in at least $27,756,902 in financial transactions that presumably involved the sale and/or purchase of merchandise between June 2005 and October 2006. These numbers appear to be at odds with the financial information provided by Murray Schindel, the defendants' accountant, in his May 16, 2007 letter to Mr. Willstatter, which was attached to the bail application. In that letter, Mr. Schindel indicates that "[i]n 2005, PVM bought approximately $8,166,438 in merchandise and sold approximately $9,297,424 in merchandise." The dollar amounts relating to these aggregate transactions, totaling approximately $17,463,862, seem to fall far short of the approximately $27,756,902 that passed through only one bank account for PVM International Corp. during roughly the same time period.[2]

### Conclusion

For the reasons provided above, the government believes that the defendants pose both a risk of flight and a danger and, thus, requests that the Court issue permanent orders of detention for the defendants.

Respectfully submitted,

ROSLYNN R. MAUSKOPF
United States Attorney

By: _____
Demetri M. Jones
Assistant U.S. Attorney

Encl.
 as.

cc:   Clerk of Court

      Counsel of Record

---

[2] While the time periods relating to PVM International Corp.'s financial transactions do not completely match, they substantially overlap and raise doubts regarding Mr. Schindel's awareness of all of the financial transactions involving PVM International Corp. and the defendants.