

May 29, 2007

The Honorable Thomas C. Platt
United States District Judge
United States District Court
Eastern District of New York
1044 Federal Plaza
Central Islip, New York 11722

     Re:  <u>United States v. Sabhnani & Sabhnani</u>, Case No. CR-07-429 (TCP)

Dear Judge Platt:

     We respectfully submit this letter in support of the release on bail of Varsha and Mahender Sabhnani. We urge the Court to release the Sabhnanis immediately on the conditions set by Magistrate Judge Kathleen Tomlinson. This letter is a joint submission on behalf of both Varsha and Mahender Sabhnani.

Introduction

     The defense filed its second bail submission with this Court by ECF and electronic mail on the morning of May 24, 2007, hours prior to the arraignment. We also filed a courtesy copy with the government by electronic mail in advance of our appearance before your Honor. Counsel for the defense fortuitously received the government's May 23, 2007 submission from Joseph Conway, Esq. counsel for the Sabhnanis' eldest daughter, approximately an hour before the May 24, 2007 arraignment. The government did not present their filing to the defendants'

counsel until they appeared in the courtroom. The face of the document indicates that it was filed by "ECF & HAND DELIVERY" on May 23, 2007. From the face of the letter, it appears the government provided their submission to the Court on May 23 and yet delayed providing counsel with the document until minutes before our appearance. The ECF system indicates this document was not filed until May 24, 2007. It was not received by ECF "bounce" until May 25, 2007.

At the May 24, 2007 hearing, the government lawyers claimed that an alleged bribe was made by Varsha Sabhnani's 75-year-old mother to "Jane Doe #1's" son-in-law. Mrs. Sabhnani's mother suffered a stroke prior to the alleged incident. Not once did the government claim Varsha Sabhnani knew anything about this alleged interaction. In addition, the government blamed counsel for not providing financial documents. The government strongly suggested that the Court should continued detention because financial documents, including tax returns, had not been produced. However, prior to arraignment counsel for each of the defendants asked if there was anything else the government was seeking to review in connection with bail. We were told that there were no other requests since the government would oppose bail under any circumstances.

<u>Varsha Sabhnani's Mother Did Not Offer a Bribe Jane Doe #1's Son in Law.</u>

We have learned from Varsha Sabhnani's brother Naresh Bokardas that Jane Doe #1's son, daughter and son-in-law spontaneously appeared at Varsha Sabhnani's mother's home on May 19, 2007. According to Mr. Bokardas, no offers of money were made at all. It was the family of the housekeeper who contacted Varsha Sabhnani's family and not vice-versa. No one attempted to dissuade the housekeeper's family from cooperating with the American authorities.

<u>No Threats Have Been Made By The Sabhnanis.</u>

There has been no evidence whatever that the defendants' threatened anyone since their arrest. The government has claimed that, while the housekeepers were employed by the defendants, Varsha Sabhnani threatened to have them arrested if they fled, either by falsely claiming they stole jewelry or by improperly influencing Indonesian officials. In an effort to explain why the housekeepers did not flee during the family's extended summer vacations of six to ten weeks, the government offered this: Varsha Sabhnani told the housekeepers that she had installed secret, hidden video cameras which would broadcast their housekeepers' actions, in real-time, to the Sabhnanis anywhere in the world so they would know instantly if the housekeepers attempted to escape. This claim is ludicrous in the extreme and demonstrates an immutable flaw in the government's case.

<u>The Financial Documents Provide a Complete Accounting of Assets, Accounts and Business Relationships – This Complete and Voluminous Production Assures Conditions May Be Set Which Will Insure the Sabhnanis' Return to Court.</u>

As per the Court's direction, the government was required to provide a list of all financial materials sought. The government has provided an extensive list of financial records and other information which *they had never requested before that date.* This list calls for a voluminous document production. We have worked around the clock over this holiday weekend to provide the government with virtually every bit of information they have requested, despite a very condensed time frame and without the direct aid of the clients who obviously remain incarcerated.

Our production is more complete than presented at the initial bail hearing. We have, albeit on an expedited basis, been able to gather, review, copy and produce a large amount of financial information. Any information missing from our first listing of accounts and assets can be attributed to the fact that our clients have been incarcerated and have been unable to directly assist us in our review of voluminous materials.

<u>Response to Government Requests for Financial Information.</u>

For the first time, at the May 24, 2007 bail hearing, the government demanded to see specific financial documents in order to directly assess the risk the Sabhnanis posed to finance their own flight. The Court directed the government to supply the defense with a listing of all documents they wished to review. In response to an extensive document request, we have provided the government with three boxes of Bates-stamped hard copy documents and a computer disc containing the electronic images of those same documents in .pdf format. In some instances, because Mr. Sabhnani remains incarcerated and has difficulty calling the bank to authorize the release of information, certain details may not be available.

The following are our responses to the government document and information requests. In some instances, our production answers the request. In others, we provide reference to other information provided or simply answer the question directly.

*1. The identity and business records for all corporations, partnerships, and other business entities in which the defendants have a financial interest, foreign or domestic;*

From the documents propvided to us, the Sabhnanis have a financial interest in Eternal Love Parfums Corporation ("EL") and PVM International Corporation ("PVM").

3

*2. Payroll records for the businesses, including, but no limited to ADP payroll records, for the businesses since January 1, 2002;*

      We have provided documents that cover this request.

*3. Financial statements for the defendants and the businesses, including general ledgers for the businesses, income statements and balance sheets for the businesses, cash receipts and disbursements journals for the businesses from January 1, 2005 to the present;*

      We have provided documents that contain the cash receipts and cash disbursement ledgers for the two companies, EL and PVM. At this time we are unable to locate any other documents that specifically match this request. There are a substantial number of document in the possession of Murray Scheindel, the CPA, which the government has subpoenaed.

*4. The identity of all financial accounts, including but not limited to bank accounts, brokerage accounts, certificates of deposits, retirement accounts, pension funds, and any accounts in which the defendant's children have a beneficial interest, foreign and domestic (collectively, the "accounts"), the current balances of the accounts, and statements for the accounts since January 1, 2002;*

      We have provided documents that cover this request.

*5. The identity of all personal loans, debts, promissory notes or other obligations involving the defendants and their children;*

      Upon information and belief, Ashok Sabhnani, Mahender Sabhnani's brother, loaned the family money for the purchase of 1600 Broadway. In addition, Mr. Sabhnani's brother may have provided additional loans reflected in tax returns we have provided. Otherwise, we have found no other documents and have no additional information that there are any outstanding loans, debts, promissory notes or other obligations involving the defendants and their children.

*6. A description of all funds transferred to or from "Ashok M. Sabhnani" or any other relatives of the defendants to the defendants, the businesses, and/or the defendants' children, including the identity of bank accounts owned or controlled by "Ashok M. Sabhnani" or any relatives of the defendants and a description of any funds held by "Ashok M. Sabhnani" any relatives of the defendants for the benefit of the defendants;*

      We have found no documents and have no information that there are any currently active accounts held for the benefit of the Sabhnanis by Ashok M. Sabhnani or any other relative. We have provided statements which demonstrate that Ashok M. Sabhnani maintained an account in the United States and Mahender Sabhnani had a power of attorney for that account. However, we believe that account has been closed and are in the process of obtaining proof of this.

*7. All records of transfers of funds by the defendants and the businesses to any entity or person in any foreign country since January 1, 2002.*

  We have provided documents that cover this request.

*8. The identity of any securities owned and/or controlled by the defendants, the businesses, the defendants' children, and/or any other nominees on behalf of the defendants, the identity of any bank or brokerage accounts where those securities are held, and any account statements or other records relating to the status of those securities:*

  We have provided documents that cover this request. We are aware of no nominee accounts.

*9. The identity of any real property of thing of value, including, but not limited to coins, gems, jewelry, and/or precious metals, owned and/or controlled by the defendants, the businesses, the defendants' children in the United States and any foreign country:*

  Upon information and belief, the Sabhnanis maintain a number of safe deposit boxes which contain jewelry. The estimated value of the jewelry is approximately $400,000 to $500,000. In addition, the government is aware of the family residence and has caused a government appraisal to be made of this property. Moreover, we have provided an appraisal for the condominium apartment located at 1600 Broadway in New York City.

*10. The existence and location of any safe deposit boxes.*

  There are Five (5) boxes at the Bank of America, Hicksville, NY. There is One (1) box at the Bank of America in Syosset, NY. There are Three (3) boxes at Astoria Federal Savings in Syosset, NY. There is One (1) box at the Chase Manhattan Bank in Syosset, NY. Additionally, the documents provided show payment for some of these safe deposit boxes.

*11. A description of the current cash/face value of all insurance policies, annuities, or any other financial instruments for which the defendants, the businesses, or the defendants' children are the owners and/or beneficiaries.*

  We have provided documents that cover this request.

*12. A description of the relationships between the defendants and the businesses and any foreign and domestic corporation, partnership, or business entity, including but not limited to Expac (sic) and Statestrong (sic) in the United Kingdom;*

  The Sabhnanis businesses maintain strictly business relationships with 5 companies that are contract manufacturers. Those companies are: Expac (Preston) Limited; Statestrong Limited;

Standard Soap Company Limited; J. Palazzolo Son, Inc. and Contract Filling Inc. We have more fully described the relationships in the body of this submission. We are aware of no accounts held by these referenced companies for either the personal benefit or business benefit of the Sabhnanis.

*13. The source and amount of funds paid to or held in escrow by all attorneys currently representing the defendants, the businesses or the defendants' children in any criminal or civil matter;*

    We have provided statements from counsel of record.

*14. The source and funds used to purchase the property located at 1600 Broadway, Apartment 17G, New York, New York;*

    Upon information and belief, Ashok Sabhnani, Mahender Sabhnani's brother, lent money for the purchase of 1600 Broadway.

*15. All federal, state, and foreign tax returns, including all corporate and partnership income tax returns, employment tax returns, individual tax returns, including all IRS Forms 1099 and W-2, filed or received by the defendants, the businesses and their children from 2002 to the present;*

    We have provided documents that cover this request.

*16. The telephone numbers for the cellular telephones owned and/or used by the defendants' children (the "children's telephones"), and the subscriber information for the telephones identified in the defendant's May 24, 2007 bail application as well as for the children's telephones;*

    The provider for all of the phones is At&T/Cingular Company. The cell numbers are Mahender: ███████, Varsha: ███████, Pooja: ███████, Tina: ███████, Dakshina: ███████, Rahul: ███████

*17. All travel-related documents, including but not limited to all visas, passports (not already in possession of the government), itineraries, and a description of all domestic travel since January 1, 2005.*

    Travel documents are in the possession of the government.

*18. An accounting of all cash and currency, foreign and domestic, that is currently in the possession of or available to the defendants, the businesses, and the defendant's children;*

    There is approximately $1,000 in cash currently available to the children in the residence.

6

*19. A list of clients and contact information for all of the businesses since January 1, 2005.*

We have provided documents that cover this request. In addition, we have provided a vendor list for the businesses.

<u>The Sabhnani Businesses Maintain Strictly Legitimate Contract Relationships With Other Businesses Which Assist In the Manufacture of Fragrance Related Products.</u>

As part of its effort to keep the defendants detained, the government claims that defendants' companies use subcontractors in the U.K. and suspects that these firms somehow "oversee bank accounts for the benefit of the defendants or their companies." Jones letter at 2. In fact, the defendants have a business relationship with these companies but hold no interest in these entities.

Expac, Ltd. is a contract manufacturer of body powders for Mr. Sabhnani's perfume business. Mr. Sabhnani's companies provide the fragrance and containers to Expac. Expac in turn combines talc with the fragrances to create a product which they then add to the containers for distribution in accordance with Mr. Sabhnani's instructions. Expac has a strictly business relationship with the defendants and control no accounts for them or their companies.

Statestrong, Ltd. is a contract manufacturer of body sprays for the defendants' companies. Mr. Sabhnani's companies provide the fragrance. Statestrong provides containers and adds the gas and other components to create these body sprays for distribution in accordance with Mr. Sabhnani's instructions. Statestrong has a strictly business relationship with the defendants and control no accounts for them or their companies.

The Sabhnanis also use Standard Soap Company, Ltd. as a contract manufacturer of perfumed soaps. Like Expac and Statestrong, Standard Soap is an English company. Again, Mr. Sabhnani provides the fragrances and Standard Soap makes them into a soap and provides wrappers for shipment. Standard Soap has a strictly business relationship with the Sabhnani businesses and control no accounts for them or their companies.

In short, the Sabhnani businesses maintain legitimate, arms length business relationships with these companies. They do not maintain ownership interests in them, nor do the companies maintain accounts on behalf of the Sabhnanis or their businesses.

<u>The Sabhnani Businesses Overseas Customers</u>

Although until May 24, 2007, the government never asked for information concerning the Sabhnani companies, they now suggest that overseas customers might "oversee bank accounts for the benefit of the defendants or their companies." Jones letter at 3.

Magistrate Judge Tomlinson ordered that there be established a restraining order on the defendants' business accounts except that such an order would not prevent the ordinary conduct of those businesses. This restraining order would be designed solely to prevent the defendants' use of company funds to flee. Subsequently, the government prepared a proposed restraining order for the corporations, which read, in pertinent part, "this restraining notice shall not prohibit the disbursement of funds necessary to satisfy the daily obligations incurred in the regular course of business." We were concerned that bank counsel might reject such language and simply freeze the business accounts because banks are not ordinarily equipped to determine what transactions are in the regular course of business. Accordingly, defense counsel proposed that the accounts be temporarily restrained entirely while the defendants are initially released so that Mr. Sabhnani could help assemble a list of vendors, warehouses, shippers and the like with which he does business. At no time did the government respond by immediately demanding the names of the defendants' customers. We are in the process of assembling such a list. We hope that a restraining order can be put in place that would permit the receipt of payments from and distribution of payments to the firms with which business is conducted. In any event, there are no "overseas customers" who oversee accounts for the defendants or their companies.

Conclusion

In short, a very substantial bail has been set following an extensive, two day bail hearing. The government has yet to come forward with any proof that either of the Sabhnanis have engaged in any sort of threatening conduct which could present a current danger to witnesses or the community at large. In the absence of such proof, the Sabhnanis should be admitted to bail and permitted to provide any missing details regarding their finances while they are on home detention. Accounts may be restrained immediately and any risk of flight concerns are adequately addressed.

Respectfully submitted,

Charles A. Ross
Attorney for Varsha Sabhnani